UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TIMOTHY M. PRATT

         Plaintiff,    1:12-cv-1754
  vs.              NAM/RFT

CELLULAR SALES OF NEW YORK, LLC,
AND CELLULAR SALES OF KNOXVILLE, INC.,

         Defendants.
_____

**APPEARANCES**        **OF COUNSEL:**

GLEASON DUNN WALSH & O'SHEA  Ronald G. Dunn, Esq.
40 Beaver Street          Daniel A. Jacobs, Esq.
Albany, New York  12207
*Attorneys for Plaintiffs*

CHAMBERLAIN HRDLICKA WHITE
 WILLIAMS & AUGHTRY     Charles L. Carbo, III, Esq.
1200 Smith Street, Suite 1400    Julie R. Offerman, Esq.
Houston, Texas  77002
and
HINMAN STRAUB, P.C.      Joseph M. Dougherty, Esq.
121 State Street
Albany, New York  12207
*Attorneys for Defendants*

**Norman A. Mordue, Senior U.S. District Judge**

MEMORANDUM-DECISION AND ORDER

I.  INTRODUCTION

  The present action is one brought pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 et seq. and the New York State Labor Law (the "Labor Law"), Article 6, § 190 *et seq.*, and Article 19, § 650 *et seq.*.  The complaint challenges plaintiff's termination and/or constructive discharge in retaliation for his participation in a collective/class action alleging defendants violated the FLSA and the "Labor Law.  The complaint challenges the conduct of the

defendants in terminating plaintiff's employment or constructively discharging him from employment and engaging in other adverse employment action in retaliation for his participation in a federal action pending in the U.S. District Court for the Northern District of New York, *Holick, et al. v. Cellular Sales of New York, LLC and Cellular Sales of Knoxville, Inc*., Case No. 1:12-CV-584, as a violation of 29 U.S.C. §215 (a) (3) and Labor Law §215 (1) (a).  The complaint further asserts that defendants violated Labor Law §195 (6) because they failed to notify plaintiff within five (5) days of his termination that he was in fact terminated and that the defendants cancelled plaintiff's employee benefits without following required notice procedures.

There are two motions presently pending before the Court.  Defendant Cellular Sales of Knoxville, Inc. ("CSOKI") moves to dismiss the complaint against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12 (b) (2).  CSOKI also moves to compel arbitration under the Federal Arbitration Act ("FAA") or in the alternative to stay the proceedings pending mediation.  Plaintiff opposes defendant's motions.

II.   FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint, Cellular Sales of New York, LLC ("CSNY-LLC") has been a New York limited liability company with offices in New York, conducting substantial business in the State of New York on behalf of, or in conjunction with, defendant CSOKI, and having its principal executive offices in Fayetteville, New York and a business address in Knoxville, Tennessee.  At all relevant times, defendant CSOKI has been a Tennessee business corporation with offices in Tennessee and/or New York and conducting substantial business in the State of New York through or in conjunction with CSNY-LLC.  Plaintiff asserts that defendants share a business address at 6513 Kingston Pike, Knoxville, Tennessee 37919-4849.  The complaint alleges that defendants "are in the business of operating retail stores located in New York and others states in which Sales Representatives employed by defendants market and sell Verizon

-2-

Wireless products and services, such as smartphones, service plans, and accessories."

Prior to August 25, 2012, plaintiff was employed by defendants as a sales representative. The complaint asserts that CSOKI and CSNY-,LLC were each the employer of plaintiff within the meaning of 29 U.S.C. §203 (d) and within the meaning of Labor Law §§190(3) and 651 (6). Moreover, at all relevant times, plaintiff alleges that defendants were joint employers of plaintiff within the meaning of 29 C.F.R. §791.2 (a). At all relevant times, defendants were an enterprise within the meaning of 29 U.S.C. §203 (r) (1).

The complaint alleges that CSOKI exerted "pervasive" control over CSNY-LLC and sales representatives in New York for the purposes of personal jurisdiction and joint employer status. Moreover, at all relevant times, CSOKI exercised extensive control over CSNY-LLC's internal operations and CSNY-LLC's operation of retail stores within New York as part of a nationwide integrated retail sales operation. Indicia of CSOKI's extensive control over CSNY-LLC's internal operations and CSNY-LLC's operation of retail stores within New York as part of a nationwide integrated retail sales operation include but are not limited to:

i. CSOKI has at all relevant times been the parent company of CSNY-LLC;

ii. Defendants at all relevant times publicly held themselves out as one integrated business;

iii. CSOKI at all relevant times chose CSNY-LLC's executive personnel, controlling the assignment of Sales Representatives at retail store locations operated by CSNY-LLC, and providing a "@cellularsales.com" e-mail address to everyone performing work on behalf of CSNY-LLC;

iv. CSOKI at all relevant times paid the salaries and reimbursed the business expenses of CSNY-LLC's executive personnel;

v. CSOKI at all relevant times has required its advance approval for CSNY-LLC to open a retail store location within New York;

vi. CSOKI representatives at all relevant times have inspected each retail store operated by CSNY-LLC to ensure compliance with CSOKI's policies;

vii. CSOKI at all relevant times has recruited potential Sales Representatives to work at retail store locations operated by CSNY-LLC;

viii. CSOKI at all relevant times provided and managed the product inventory sold at retail store locations operated by CSNY-LLC;

ix. CSOKI at all relevant times administered and controlled CSNY-LLC's marketing, accounting, and sales system for the sale of Verizon Wireless products; and

x. The profits from sales and other payments at retail store locations operated by CSNY-LLC go directly to benefit CSOKI.

The complaint alleges that at all relevant times, CSOKI exercised extensive control over how sales representatives employed at retail store locations operated by CSNY-LLC performed their duties.  Indicia of CSOKI's extensive control over how sales representatives employed at retail store locations operated by CSNY-LLC performed their duties include but are not limited to:

i. Prior to January 1, 2012, CSOKI required sales representatives, including plaintiff, employed at retail store locations operated by CSNY-LLC to incorporate as limited liability companies and sign independent sales agreements with CSNY-LLC drafted by CSOKI as a condition of performing as sales representatives;

ii. CSOKI at all relevant times directed sales representatives, including plaintiff, to exclusively sell Verizon Wireless products while on-duty or off-duty as a sales representative;

iii. CSOKI at all relevant times provided formal paid training to sales representatives, including plaintiff, employed in retail store locations operated by CSNY-LLC that covered product information, sales techniques, sales presentation and defendants' policies and procedures;

iv. CSOKI at all relevant times has directed sales representatives, including plaintiff, employed in retail store locations operated by CSNY-LLC on appropriate dress, recordkeeping obligations, the manner by which sales to customers are made, and other performance standards;

v. sales representatives, including plaintiff, employed in retail store locations operated by CSNY-LLC at all relevant times have been denominated as CSOKI's agents in executed customer agreements;

vi. sales representatives, including plaintiff, employed in retail store locations operated by CSNY-LLC, at all relevant times have made payments from the sales of Verizon products to and bill payments on Verizon Wireless service plans from customers to CSOKI; and

vii. the Chief Executive Officer of CSOKI has had consistent repeated direct contact with sales representatives, including plaintiff, employed at retail store locations operated by CSNY-LLC regarding the concerns of sales representatives and CSOKI's plans to resolve them.

Plaintiff asserts that this Court has personal jurisdiction over CSOKI under CPLR § 301 because CSNY-LLC is a "mere department" and/or agent of CSOKI and therefore CSOKI is "doing business" within New York through CSNY-LLC.  Thus, this Court has personal jurisdiction over CSOKI under CPLR § 302(a)(1) because plaintiff's claim arises from CSOKI's transaction of business and/or entering of contracts for goods and services in New York directly or through its agent CSNY-LLC.  According to plaintiff, CSOKI's and CSNY-LLC's extensive control over how sales representatives employed at retail store locations operated by CSNY-LLC performed their duties bring them within the meaning of "joint employer" pursuant to 29 C.F.R. §791.2(a).

III. DISCUSSION

A. Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12 (b) (2)

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the

-5-

motion by pleading in good faith, *see* Fed. R. Civ. P. 11, legally sufficient allegations of jurisdiction," i.e., by making a " prima facie showing" of jurisdiction. *Jazini v. Nissan Motor Co.*, *Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) *(citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. denied*, 498 U.S. 854 (1990); *Hoffritz for Cutlery, Inc. v. Amajac*, *Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); Fed. R. Civ. P. 12 (b) (2).

Defendant argues that plaintiff's jurisdictional allegations are conclusory and therefore insufficient to defeat the present motion. *See Jazini*, 148 F.3d at 184 (conclusory statements alleging subsidiary was an agent of the parent and restating the legal standard for determining agency with no facts supporting that conclusion did not constitute a prima facie showing of agency). Review of the complaint reveals that plaintiff's jurisdictional allegations are not conclusory. Rather, plaintiff alleges specific facts to establish that CSNY-LLC is "mere department" of CSOKI as required by the Second Circuit in *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984). Specifically, in the *Volkswagenwerk* case, the Court found first, that "common ownership"- was "essential." Second, "financial dependency of the subsidiary on the parent corporation was required;" third, "the degree to which the parent corporation interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities was a factor;" and fourth, courts were to look to, "the degree of control over the marketing and operational policies of the subsidiary exercised by the parent." *Id.*

Plaintiff's allegations mirror the four requirements of *Volkswagenwerk*. Specifically, plaintiff asserts *inter alia*, that: 1) CSOKI paid the salaries and reimbursed the business expenses of CSNY-LLC's executive personnel;2) CSOKI has required its advance approval for CSNY-LLC to open a retail store location within New York; 3) CSOKI representatives have inspected each retail store operated by CSNY-LLC to ensure compliance with CSOKI's policies; 4) CSOKI has

recruited potential sales representatives to work at retail store locations operated by CSNY-LLC; 5) sales representatives, including plaintiff, employed in retail store locations operated by CSNY-LLC have been denominated as CSOKI's agents in executed customer agreements; 6) CSOKI provided and managed the product inventory sold at retail store locations operated by CSNY-LLC; 7) CSOKI administered and controlled CSNY-LLC's marketing, accounting, and sales system for the sale of Verizon Wireless products; 8) the profits from sales and other payments at retail store locations operated by CSNY-LLC go directly to benefit CSOKI. Based upon these non-conclusory allegations, the Court finds that plaintiff has met his prima facie case of establishing personal jurisdiction over CSOKI at this pre-discovery stage of the litigation. *See Ball*, 902 F. 2d at 197. Thus, defendant CSOKI's motion to dismiss for lack of personal jurisdiction must be denied at this juncture.

B.     Motion to Compel Arbitration and/or Stay Proceedings

1.     Applicable Standard Mirrors Summary Judgment

In the alternative, defendant CSOKI moves to compel arbitration or dismiss the complaint or in the alternative to stay of the action pending arbitration. In the context of motions to compel arbitration brought under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 (2000), a court applies a standard similar to that applicable for a motion for summary judgment. *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *Par-Knit Mills v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980)); *Doctor's Assoc.v. Distajo*, 944 F.Supp. 1010, 1014 (D.Conn.1996), *aff'd*, 107 F.3d 126 (2d Cir. 1997). If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary. 9 U.S.C. § 4. *See id.* The summary judgment standard is appropriate in cases where a District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration. *See id.* The Court therefore proceeds to review the record to determine whether plaintiff have raised any

triable issue of fact.

It is undisputed that plaintiff's compensation agreement with CSNY-LLC contained an arbitration clause which required the parties to submit "[a]ll claims, disputes or controversies arising out of , or in relation to this document or Employee's employment with Company shall be decided by arbitration." The "right to arbitrate "shall survive termination of the Employee's employment with the Company." Plaintiff's claims in this case, which contest the manner and condition of his termination, fall squarely within the scope of the broad arbitration provision, which governs "all claims, disputes, or controversies arising out of or in relation to . . . Employee's employment . . . ." Congressional policy, as embodied in the Federal Arbitration Act ("FAA"), favors enforcement of arbitration clauses in commercial contracts. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc*., 473 U.S. 614, 625 (1985); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983). Section 2 of the Act expresses this preference, stating that written agreements to arbitrate in such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A further provision requires courts to stay judicial proceedings pending arbitration if the court is satisfied that the issues presented are arbitrable or, in other words, contemplated by an agreement to arbitrate. *See* 9 U.S.C. § 3. These statutory provisions remain mandatory, as the Supreme Court emphasized in *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985):

> [T]he [Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. Thus, insofar as the language of the Act guides our disposition of this case, we would conclude that agreements to arbitrate must be enforced, absent a ground for revocation of the contractual agreement.

*See also Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987). Furthermore, at this stage of the litigation, a court should not consider the merits of the underlying controversy.

*See CB Richard Ellis, Inc. v. American Environmental Waste Management*, 1998 903495, No. 98-CV-4183 (JG) (E.D.N.Y. Dec 4, 1998). Rather, the only issue is whether the parties have agreed to mediate the dispute. *See Mitsubishi*, 473 U.S. at 628.

Here, plaintiff contends that although he signed the arbitration agreement, he did not do so voluntarily. Plaintiff claims that CSNY-LLC essentially "forced" him to sign the agreement under circumstances that would have forced him to lose his job if he had not signed it. Plaintiff contends that he wanted to review the Compensation Agreement with an attorney but he could not print the agreement so he was forced to sign with without printing it before his next shift began. According to plaintiff, CSNY-LLC had a strict policy of requiring it employees to show up for shifts unless they could find coverage for those shifts. Thus, plaintiff claims he could not take time off to consult with an attorney about the Compensation Agreement because he did not have time to find someone to cover his shift.

The Court is unpersuaded by Mr. Pratt's conclusory declarations. Pratt does not explain how or why he could not print the Compensation Agreement and the basis for imputing fault for this failure to CSNY-LLC. Moreover, the Court cannot accept Pratt's conclusory statement that he intended to consult with a lawyer in the absence of more facts detailing the name of the lawyer, or a specific date and time that such a meeting had been arranged. Finally, Pratt asserts without asserting the basis of his personal knowledge, that CSNY-LLC had a punitive policy of firing employees who did not show up for shifts without making advance arrangements for coverage. Moreover, at no point does Pratt state that he asked his employer for a hard copy of the Compensation Agreement or for assistance in printing a copy of the Compensation Agreement or for extra time to review it or for the opportunity to meet with a lawyer to discuss its terms. Instead, Pratt, simply avers that he would have been subject to "the possibility of discipline" had he elected not to show up for his shift and decided to meet with an unidentified lawyer.

These unsupported assertions are insufficient to create a question of fact concerning whether Pratt signed the Compensation Agreement involuntarily.  Under New York law, in the absence of fraud or other wrongful conduct, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he is therefore bound by its terms and conditions.  *Level Export Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 87 (1953).   "[W]hen a party to a written contract accepts it, is a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not.  Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations." *Id*.

Plaintiff also argues that the Compensation Agreement's arbitration clause, which requires that each party bear it's own costs of arbitration, including attorneys' fees, precludes his ability to effectively vindicate his retaliation claims under the FLSA and the Labor Law.  Indeed, plaintiff contends that by requiring him to shoulder the entirety of the arbitration costs and attorneys' fees, there is a genuine issue of material fact as to whether he can effectively "vindicate [his] rights in the arbitration forum."  *Green Tree Fin. Corp. - Alabama v. Randolph*, 531 U.S. 79, 90 (2000).  Despite the obstacles facing the vindication of plaintiff's claims, the Supreme Court's recent decision in *American Exp. v. Italian Colors Restaurant*, --- U.S. ----; 133 S.Ct. 2304 (2013) which reversed the Second Circuit's decision in *In re American Express Merchants' Litigation*, 667 F.3d 204 (2d Cir. 2012) (" *Amex III* "), compels the conclusion that plaintiff's agreement to arbitrate his employment disputes with CSNY-LLC is not rendered invalid by virtue of the fact that his claim is not allegedly economically worth pursuing individually. *See Sutherland v. Ernst & Young, L.L.P.*, --- F. 3d. ---- ; 2013 WL 4033844 (2d Cir. Aug. 9, 2013).  Although the "effective vindication doctrine" could be used to invalidate "a provision in an arbitration agreement forbidding the assertion of certain statutory rights.... [and] would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impractical," *Italian Colors*,

133 S.Ct. at 2310–11 (relying on *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. at 90, plaintiffs cannot use the doctrine to invalidate class-action waiver provisions by showing that "they ha[d] no economic incentive to pursue their [FLSA] claims individually in arbitration." *Id.* at 2310. In other words, "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of the right to pursue that remedy." *Id.* at 2311. Accordingly, even assuming the truth of plaintiff's allegations that the recovery he seeks in this case will be exceeded by the costs of individual arbitration, the Supreme Court has held that the "effective vindication doctrine"cannot be used to invalidate arbitration provisions such as the one at issue here.

The Court notes that to the extent that plaintiff claims that the "only term of the Compensation Schedule that differs in any material manner from the terms and conditions of [his] prior work as a Sales Representative . . . is the requirement that [he] submit all disputes related to [his] employment . . . to arbitration." However, plaintiff's prior "Non-Exclusive Independent Sales Agreement" with CSNY-LLC also contained a mediation provision wherein the parties' agreed to "bear [their] own legal expenses." Consequently, the arbitration provision in his Compensation Agreement can hardly be considered a worthwhile stretch.

Finally, plaintiff contends that the Compensation Agreement is unconscionable based on the allegations of his declaration which suggest he signed it under coercion and duress. As referenced above, however, the Court finds that the allegations of Mr. Pratt's declaration are conclusory. Plaintiff contends that he was offered his arbitration agreement on a "take it or leave it" basis which renders it unenforceable. However, it is plain that "this is not sufficient under New York law to render the [arbitration] provision procedurally unconscionable." *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115, 122 (2d Cir. 2010) (citing *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F.Supp.2d 566, 571 (S.D.N.Y. 2009). In *Ragone*, the court rejected

-11-

plaintiff's assertions that she did not read arbitration agreement before signing it. See 595 F.3d at 122. The court held that it "[could] not accept a rule that would allow a party to avoid his legal obligation to read a document carefully before signing it" and the law did not absolve plaintiff of this obligation because she "[did] not have a college degree and has no experience or background in business or human resources." *Id.* On the contrary, New York courts have repeatedly ruled that even the fact that a prospective employee possesses an imperfect grasp of the English language will not relieve an employee of making reasonable effort to have document explained to him. *See id.*

Here, plaintiff argues that he is not a lawyer and that he was prevented from meeting with a lawyer to discuss the Compensation Agreement. However, he does not say that he did not read the Agreement himself or that he failed to understand it. Nor does Pratt state notably that he made any effort to ask anyone at the company or even any of his co-workers to explain the document to him prior to signing it. He simply avers in cconclusory terms that he signed it because he believed that he would lose his job if he didn't sign it although he does not set forth any facts in support of his personal knowledge of the alleged disciplinary policy at the heart of his fears. "Mere inequality in bargaining power" is not a basis for declining to enforce arbitration agreements contained in employment contracts. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).

As a further matter, it is well-settled that an agreement to arbitrate creates a presumption of arbitrability. In deciding whether parties agreed to arbitrate a certain matter, a court should generally apply state-law principles to the issue of contract formation. *See Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000); *see also Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 27 (2d Cir. 2002). In this regard, under New York law "arbitration will not be compelled absent the parties' 'clear, explicit and unequivocal agreement to arbitrate.'" *See Manigault v. Macy's East, LLC*, 2009 WL 765006, at *2 (2d Cir. 2009) (quoting *Fiveco, Inc. v. Haber*, 11 N.Y.3d 140, 144

(2008)). Such agreement may be expressed formally through words, or through a party's conduct. *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 582 (2d Cir. 2006) ("A contract implied in fact may result as an inference from the facts and circumstances of the case, although not formally stated in words, and is derived from the presumed intention of the parties as indicated by their conduct. It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.") (quotation and internal citations omitted).

New York courts have determined that "[t]he conduct of a party may manifest assent if the party intends to engage in such conduct and knows that such conduct gives rise to an inference of assent." *See Maas v. Cornell Univ*., 94 N.Y.2d 87, 94 (1999) (internal citation omitted). In the employment context, "[a]n employee may consent to a modification to the terms of employment by continuing to work after receiving notice of the modification." *See Manigault*, 2009 WL 765006, at *2 (citation omitted); *Bottini v. Lewis & Judge Co.*, 211 A.D.2d 1006, 1008 (3d Dep't.1995); *Waldman v. Englishtown Sportswear, Ltd.*, 92 A.D.2d 833, 835 (1st Dep't 1983).

In this case, plaintiff continued working for CSNY-LLC after he signed the Compensation Agreement and did not object to its terms until the present litigation erupted. There is no indication that he was not aware of the existence of the arbitration agreement long before the time the present litigation was filed.

The Court finds that plaintiff has failed to raise a triable question of material fact concerning whether the parties entered into a valid and enforceable agreement to arbitrate disputes related to and arising out of plaintiff's employment with CSNY-LLC.

In determining whether to compel arbitration, a court must determine whether plaintiff's claims fit within the terms of the arbitration clause. As stated above, federal policy strongly favors arbitration. The Supreme Court has stated that "any doubts concerning the scope of arbitrable

-13-

issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or like defense to arbitrability." *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25; *see also AT & T Techs., Inc.* v. *Communications Workers of America*, 475 U.S. 643, 650 (1986) (stating that presence of arbitration clause creates presumption of arbitrability). In conformity with these principles, the Second Circuit has acknowledged that courts must "construe arbitration clauses as broadly as possible." *S.A. Mineracao da Trindade–Samitri v. Utah Int'l, Inc*., 745 F.2d 190, 194 (2d Cir. 1984). A court should grant a request for an order to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs*., 475 U.S. at 650 (citing *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

The presumption in favor of arbitration acquires particular significance when the arbitration clause is broadly worded as is the arbitration agreement in the present case. *See AT & T Technologies*, 475 U.S. at 650; *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 121 (2d Cir. 1991) (stating that, in cases of broadly worded arbitration clauses, "the strong presumption in favor of arbitrability applies with even greater force"). Here, the arbitration clause refers the parties to arbitration to resolve "all claims, disputes or controversies arising out of, or in relation to this document or Employee's employment with company." Such circumstances call for arbitration of any grievance not expressly excluded by the arbitration clause, unless there exists "the most forceful evidence of a purpose to exclude the claim from arbitration." *AT & T Techs*., 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 584–85); *see also Roso–Lino Beverage Distribs., Inc. v. Coca–Cola Bottling of New York*, 749 F.2d 124, 126 (2d Cir. 1984); *Wire Serv. Guild, etc. v. United Press Int'l, Inc*., 623 F.2d 257, 260 (2d Cir.1980) (stressing that language exempting certain disputes from arbitration clause must be "clear and unambiguous" or "unmistakably

clear"). The complaint unquestionably raises a "dispute" between the parties arising from plaintiff's employment with defendant, the company. Thus, there is no factual basis upon which to deny an order compelling arbitration.

D. Motion for a Stay of the Proceedings

The only remaining issue is whether to grant defendants' motion for a stay of arbitration or their motion to dismiss the case in favor of arbitration. Plaintiff's complaint raises claims under the New York Labor Law and the FLSA, all of which are subject to arbitration under the FAA as discussed *infra*. Where all of the issues raised in the complaint must be submitted to arbitration, the court may dismiss an action rather than stay proceedings. *Rubin v. Sona Intern. Corp.*, 457 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) . "In making this determination, the Second Circuit urges district courts to consider the fact that 'dismissal renders an order appealable under [9 U.S.C.A.] § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under [ 9 U.S.C.A.] § 16(b).'" *Id*. Under these circumstances, the Court concludes that dismissal is appropriate.

IV. CONCLUSION

After thorough review of the record and applicable law, it is hereby

ORDERED that defendants' motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12 (b) (2) (Dkt. #6) is DENIED; and it is further

ORDERED that defendants' motion to dismiss and compel arbitration pursuant to Fed. R. Civ. P. 12 (b) (1) and/or Fed. R. Civ. P. 12 (b) (6) (Dkt. #8) is GRANTED. The Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

Date:   September 30, 2013

Norman A. Mordue
Senior U.S. District Judge